## In the Matter of the Estate of Elysio Cardoso.

Surrogate's Court, New York County, November 15, 1928.

*Coudert Bros.* [*Thomas W. Kelly* of counsel], for the executor.
*William L. Cannon,* for Dr. Daniel A. Harrison's sanitarium.
*George E. Cogswell,* for Harry V. Hoyt, committee.
*William P. Schoen,* special guardian.

O'Brien, S. In this executor's accounting objections have been filed by Harriet R. Harrison, as executrix of the last will and testament of Daniel A. Harrison, deceased, and Dr. S. Edward Pretz, superintendent of Dr. Daniel A. Harrison's sanitarium, who allege that they arecreditors of this estate and that the account is

erroneous to the extent that their claim was rejected. The sanitarium in question is located at Whitestone, N. Y., and is known as " Breezehurst Terrace."

*On the 12th day of December, 1906,* one Alice Smith, otherwise known as Alice Cardoso, was declared an incompetent by the County Court, of Kings county upon a petition of the testator, in which he alleged that he was her husband. Pursuant to the order of said court she was committed to the " Breezehurst Terrace " sanitarium. On the same date deceased signed an agreement with the aforesaid sanitarium, which reads as follows:

" Extras — Liquor, Cigars, Papers, Mending, Special Drives and Laundry.

" BREEZEHURST TERRACE.

" Hospital for Mental and Nervous Disorders.

" Whitestone, N. Y.

" OBLIGATION.

" In Consideration of Mrs. Alice Cardoso being admitted as a patient in the above Hospital, we do jointly and severally promise to pay the Medical Superintendent of this Hospital, or to his order, every four weeks, in advance 25 dollars per week, for board and treatment, and to provide or pay for all requisite clothing, and for other things deemed necessary or proper for the health and comfort of said patient; to pay for all glass or furniture broken or destroyed by said patient; to remove her when discharged, and if taken away not cured, against the advice and consent of the Medical Superintendent, before the expiration of four weeks, to pay four weeks' care and treatment.

" Witness our hands the 12th day of Dec. 1906.

" E. CARDOSO."

From that day and until his death, *April 1, 1926,* he paid for her board, maintenance and treatment in accordance with the terms of said contract, first, at the rate of twenty-five dollars a week, later at the rate of thirty-five dollars a week, and finally at the rate of fifty dollars a week from January, 1920. He left *a will dated the 3d day of January, 1918,* which was admitted to probate by this court, and in which he gave a legacy to Alice Smith by the 3d paragraph, which reads as follows:

" *Third.* I give and bequeath to Alice Smith, now an inmate of Dr. Harrison's Sanitarium, at Flushing, N. Y. the sum of Five thousand ($5,000) Dollars free from State or Federal inheritance taxes."

The objecting creditors have filed a claim with the executor of his estate for board, lodging and sundries, for the period extending

from *April 1, 1926,* the date of decedent's death, *to February 1, 1928,* amounting to $5,694.31. They base their claim upon the contract signed by the deceased, upon a letter dated July 25, 1912, written by him to said sanitarium, which reads as follows:

" N. Y. *July 25th,* 1912.

" Dr. Harrison Sanitarium
    " Whitehurst, L. I.
                " N. Y.:

" Dear Sir.— Please find enclosed my cheque for $145.64 in payment of enclosed bill.

" As I am about to undertake a business trip for a period of about six weeks, my wife will remain in your place and such is my desire to be until she is completely cured and able to take care of herself, therefore please do not allow anyone sister or other to remove her from your institution. Mr. A. Kennedy and Mrs. J. Delcambre her sister will call and see her from time to time and take care of her needs.

" I remain, dear Sir          Yours truly
                                    " (Sgd.) E. CARDOSO.

" My wife must ignore I am going away."

and upon another letter, dated February 26, 1913, which reads in part as follows:

" As for the past and according to my instructions before given regarding Mrs. Cardoso, her sister Mrs. Delcambre and Mr. Alex Kennedy whose addresses you know will look after her needs, etc., and I repeat that none can take her out without my consent. I will be away only a few weeks and you will occasionally hear from me."

Their contention is that these instruments constituted an agreement on his part to pay for her care until she was completely cured and able to take care of herself, and that she was not to be removed from the sanitarium except by him. Their contention practically amounts to a claim that she was to be kept and cared for for the rest of her life, and that his estate is bound not only to pay this claim as already filed, but to continue such payments in the future as bills for board and lodging may accrue.

The executor, on the other hand, in rejecting the claim, has done so on the ground that any obligation on the part of the testator to pay the sanitarium for the support and maintenance of Alice Smith ceased with his death.

At the hearing at which testimony was taken it was submitted that there was some uncertainty as to whether or not Alice Smith, otherwise known as Alice Cardoso, was the wife by common law or

otherwise of the decedent. No evidence, pro or con, was presented, neither side pressing this question for decision, but both relying entirely upon the issue of the alleged contract between the deceased and the sanitarium. The executor contends that the contract with the sanitarium was for the period of four weeks; that the sanitarium was not bound by said contract to care for said patient for a period longer than four weeks; that at the end of each period, year after year, either party was absolutely free to discontinue the arrangement without further liability, and in addition that decedent was always free to take the incompetent away at any time he wished, regardless of the four weeks' limitation; that obviously after his death this four weeks' contract was incapable of further renewal by him, and that on the contrary, his estate has definitely repudiated it.

I hold that the claim has not been sustained, that the contract did not survive testator's death, that the claim was properly rejected by the executor, and that an adjustment should be made by claimants with the executor for the excess in the last payment made over what was actually due at the time of testator's death. The original contract is merely an agreement on the decedent's part to pay a specified rate per week four weeks in advance for board, treatment, etc. It covers no period of time and was binding on him only so long as he left her at that institution. He had a perfect right at any time during his life to remove her to another institution and any contractual relation between him and the sanitarium would then cease. There is nothing in the contract which would justify a construction that it was in any way to continue after his death and become a charge against his estate. The objectants fall into error when they attempt to predicate such an agreement upon the contract above and the quoted letters written by the deceased to the institution subsequently to the making of such contract, in which he stated that he was going away for a business trip of six weeks and desired that nobody be allowed to take her away from the institution. Said letters neither modified nor enlarged the terms of said contract. Moreover the claimants are in error when they contend that by reason of the agreement " to remove her when discharged " the contract survived the death of testator and the obligation continues indefinitely, for, in the first place, the language used, viz., " *to remove her when discharged, and if taken away not cured, against the advice and consent of the Medical Superintendent, before the expiration of four weeks, to pay for four weeks' care and treatment,*" clearly limits the obligation " to remove when discharged " to the time or term of the contract, that is, the last four weeks paid for by testator, and negatives any idea or concept of an indefinite or continuing contract, which would survive

testator's death; and in the second place, the contract is personal in its form and its purpose and is clearly of that class of agreements which depends upon the ability of the parties to perform. (*Kirkpatrick Home for Childless Women* v. *Kenyon*, 119 Misc. 349; *Matter of Daly*, 58 App. Div. 49; *Lorillard* v. *Clyde*, 142 N. Y. 456.)

The preliminary objection made to the appointment of the special guardian is overruled.

Submit decree accordingly.